UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CHRISTOPHER STEELE, acting for himself individually, and others similarly situated; BRENDAN LEVERON, acting for himself individually, and for others similarly situated, and for the general public,<br><br>    Plaintiffs,<br><br>    v.<br><br>AMERICAN MORTGAGE MANAGEMENT SERVICES, dba PINNACLE; PINNACLE FAMILY OF COMPANIES; RICK L. GRAF, an individual; SUZANAH HARRIS, an individual; JENNIFER RISCHMAN, an individual; ERIC SCHWABE, an individual; ANITA VANDERVEEER, an individual,<br><br>    Defendants. | Case No. 2:12-cv-00085 WBS JFM<br><br>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO COMPEL ARBITRATION |

----oo0oo----

Plaintiffs Christopher Steele and Brendan Leveron bring this action on behalf of themselves and proposed class members

1

against American Mortgage Management Services, LLC, dba Pinnacle ("Pinnacle"), and certain Pinnacle employees, alleging violations of federal and California employment law.  Pinnacle now submits a motion to compel arbitration and to dismiss plaintiffs' claims.

I.   Relevant Facts and Procedural History

Pinnacle is a private maintenance company that employs "several thousand private maintenance workers and service personnel at work sites throughout the United States." (Compl. ¶ 21 (Docket No. 1).)  Rich Graf, Eric Schwabe, Anita Vanderveer, Suzanah Harris, and Jennifer Rischman are all management employees of Pinnacle alleged to have control over the wages, hours, or working conditions of Pinnacle's employees. (Id. ¶¶ 22-27.)

Plaintiff Christopher Steele is a Pinnacle maintenance worker who has worked at Pinnacle sites in Roseville, California and Elk Grove, California since 2007.  (Id. ¶ 18.)  Plaintiff Brendan Leveron is also a Pinnacle maintenance worker that has worked at a Roseville, California site since 2009. (Id. ¶ 19.)

Before entering into employment with Pinnacle, plaintiffs signed an Issue Resolution Agreement ("Agreement") with Pinnacle.  (Fulcher Decl. ¶¶ 7-8, Exs. A & B (Docket No. 17).)  The cover sheet to the Agreement alerts applicants that "[Pinnacle] has implemented an arbitration procedure to provide quick, fair, final and binding resolution of employment-related legal claims."  (Id.)

The Agreement begins by stating in bold type that "[i]f you wish to be considered for employment you must read and sign the following Issue Resolution Agreement."  (Id.)  If the

2

1 applicant signed the Agreement and the wished to withdraw
2 consent, the applicant could inform Pinnacle in writing within
3 three days, but by doing so the employee withdrew his application
4 for employment.  (Id.)

5      The Agreement asks the applicant to "recognize that
6 differences possibly may arise between [Pinnacle] and me during
7 my employment" and that "it is in the interest of both [Pinnacle]
8 and me that all disputes be resolved in a manner that is fair,
9 private, expeditious, economical, final, and less burdensome or
10 adversarial than court litigation."  (Id.)  Both parties must
11 also acknowledge that Pinnacle "has an effective Open Door
12 Policy," that the parties "will try to take advantage of it," but
13 that "not all issues can be resolved using the Open Door Policy."
14 (Id.)

15      The Agreement goes on to state:

> I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment, and/or cessation of employment with American Management Services, LLC **exclusively** by final and binding **arbitration** before a neutral Arbitrator. By way of example only, such claims include claims under federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended . . . the Americans With Disabilities Act, state and federal anti-discrimination statutes, the law of contract, and law of tort.
>
> [Pinnacle] agrees that it will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application for candidacy for employment, employment, and/or cessation of employment with you, the claimant, **exclusively** by final and binding **arbitration** . . . . By way of example only, such claims include [those listed in the previous paragraph].
>
> I understand that if I do file a lawsuit regarding a dispute arising out of or relating to my application or

3

>1 candidacy for employment, employment, or cessation of
>2 employment, [Pinnacle] may use this Agreement in support
>  of its request to the court to stay or dismiss the
>3 lawsuit and require me instead to use arbitration.
>
>4 . . .
>
>5 I further agree that if I commence arbitration, it will
>  be conducted in accordance with the "Issue Resolution
>6 Rules."
>
>7 . . .
>
>8 **The Issue Resolution Agreement and the Issue Resolution
>  Rules affect your legal rights. You may wish to seek
>9 legal advice before signing this Issue Resolution
>  Agreement.**
>
>10 I have read this Agreement and understand that I should
>   read the Issue Resolution Rules over the next few days.

(Id.). Both the applicant and a Pinnacle business manager signed each Agreement. (Id.)

The Issue Resolution Rules outline the specifics of the arbitration process and include provisions on claims subject to arbitration, cost arrangements, discovery, statute of limitations, remedies, and termination/modification, among others. (Fulcher Decl. ¶ 9, Ex. C. ("IRR").) The Rules are provided to every applicant at the time of their application. (Id. ¶ 9.)

Plaintiffs allege that Pinnacle and its employees required plaintiffs and others similarly situated to work more than forty hours a week without providing timely overtime compensation. (Compl. ¶¶ 32-35.) Their Complaint alleges violations of the Fair Labor Standards Act ("FLSA"), failure to pay overtime as required under the California Labor Code, failure to pay full wages when due under the California Labor Code, failure to adhere to California record-keeping provisions, unfair

4

1 business practices under California law, claims under the
2 California Private Attorneys General Act ("PAGA"), retaliation
3 and whistleblowing violations under both California and federal
4 law, and claims for equitable and injunctive relief. (Id. ¶¶ 69-
5 151.) Defendants' attorney sent correspondence to plaintiffs'
6 counsel stating that plaintiffs are bound to arbitrate their
7 claims under the Agreement, but plaintiffs did not withdraw the
8 action. (Fulcher Decl. ¶ 11, Ex. D.)
9          Defendants now move to compel arbitration for
10 plaintiffs' individual claims, to dismiss the class claims
11 without prejudice, and to dismiss plaintiffs' individual claims
12 or, in the alternative, to stay the proceedings on both
13 individual and class claims until the outcome of arbitration.
14 II.  Analysis
15          The Federal Arbitration Act ("FAA") provides that a
16 written provision in a "contract evidencing a transaction
17 involving commerce to settle by arbitration a controversy
18 thereafter arising out of such contract . . . shall be valid,
19 irrevocable, and enforceable, save upon such grounds as exist at
20 law or in equity for the revocation of any contract." 9 U.S.C. §
21 2. "[T]he FAA limits courts' involvement to 'determining (1)
22 whether a valid agreement to arbitrate exists and, if it does,
23 (2) whether the agreement encompasses the dispute at issue.'" Cox
24 v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008)
25 (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d
26 1126, 1130 (9th Cir. 2000)). The FAA "leaves no place for the
27 exercise of discretion by a district court, but instead mandates
28 that district courts *shall* direct the parties to proceed to

1  arbitration on issues as to which an arbitration agreement has
2  been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213,
3  218 (1985). Upon a showing that a party has failed to comply
4  with a valid arbitration agreement, the district court must issue
5  an order compelling arbitration. See Cohen v. Wedbush, Noble
6  Cooke, Inc., 841 F.2d 282, 285 (9th Cir. 1988).

A. Scope of the Arbitration Agreement

Under the FAA, arbitration agreements must be "rigorously enforced." Perry v. Thomas, 482 U.S. 483, 490 (1987). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is a construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

The FAA covers abitration agreements with employers who operate "within the flow of interstate commerce." Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 273 (1995); see Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 115 (2001) (holding that the FAA's reach is even broader than statutes touching transaction "in commerce" since Congress' use of the phrase "involving commerce . . . signals an intent to exercise Congress' commerce power to the full"). Arbitration agreements between local employees and nationwide companies are subject to the FAA. See Adams, 532 U.S. at 124 (reversing a decision that declined to extend the FAA to an arbitration agreement between a local store manager and a nationwide retailer); Nelsen v. Legacy Partners Residential, Inc., 207 Cal. App. 4th 1115, 1123-24 (1st

Dist. 2012) (applying the FAA to arbitration agreement between a Californian residential property manager and his nationwide property management employer).

A wide range of claims are subject to arbitration under the FAA. See, e.g., Kilgore v. KeyBank, Nat'l Ass'n, 673 F.3d 947, 960 (9th Cir. 2012) (overturning the Broughton and Cruz line of cases and holding that requests for broad public injunctive relief, including those brought under California's Unfair Competition Law, are covered by the FAA); Albertson's, Inc v. United Food & Comm. Workers Union, AFL-CIO & CLC, 157 F.3d 758, 762 (9th Cir. 1998) ("[U]nder the FAA the employee's individual agreement to arbitrate all disputes was enforceable with respect to disputes over claims covered by the FLSA."); Luchini v. Carmax, Inc., Civ. No. 12-0417 LJO DLB, 2012 WL 2995483, at *13-14 (E.D. Cal. July 23, 2012) (holding that PAGA claims, including wage and hour claims, are arbitrable and citing multiple cases that hold similarly).

Here, plaintiffs do not assert that they misunderstood or otherwise did not agree to the clear language of the Agreement. The Agreement states that applicants and Pinnacle agree to resolve "any and all previously unasserted claims, disputes or controversies arising out of or relating to . . . application or candidacy for employment, employment, and/or cessation of employment" through arbitration and goes on to list an array of legal claims that are subject to abritration. (Fulcher Decl. ¶¶ 7-8, Exs. A & B.) The plain language of the Agreement covers plaintiffs' claims in this case, all of which have been held to be subject to arbitration under the FAA.

7

To the extent that plaintiffs cite California case law for the proposition that California wage and hour claims are exempt from the FAA, the United States Supreme Court has held that "[w]hen state law prohibits outright arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." AT&T Mobility v. Concepcion, 131 S. Ct. 1740, 1747 (2011) (citations omitted). The cases cited by plaintiffs in support of their exemption argument are either overruled[1] or inapplicable.[2] Plaintiffs' waiver argument and agency argument are similarly unconvincing.

The Agreement between plaintiffs and Pinnacle is therefore enforceable under the FAA.

---

[1]  Decided before Concepcion, Gentry v. Superior Court holds that when a court rules on a wage and hour claim involving an arbitration agreement waiving class arbitration, the courts must look to a variety of factors to see whether "class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the effected employees." Gentry v. Sup. Ct., 42 Cal. 4th 443, 463 (2007).
While the California Supreme Court has not revisited the Gentry holding in the wake of Concepcion, California federal courts have held that Concepcion overruled Gentry. See Sanders v. Swift Transp. Co. of Ariz., LLC, 843 F. Supp. 2d 1033, 1037 (N.D. Cal. 2012); Lewis v. UBS Fin. Servs., 818 F. Supp. 2d 1161, 1167 (N.D. Cal. 2011); Valle v. Lowe's HIW, Inc., Civ. No. 11-1489 SC, 2011 U.S. Dist. LEXIS 93639, at *16-17 (N.D. Cal. Aug. 22, 2011).

[2]  Plaintiffs also cite Hoover v. American Income Life Insurance Co., 206 Cal. App. 4th 1193, 1207-08 (4th Dist. 2012) for the proposition that wage and hour claims are not subject to the FAA.
Unlike the case at hand, the defendant in Hoover, who bore the burden of proving interstate commerce, presented no declarations or other evidence that its activities constituted interstate commerce, therefore the FAA did not apply. Id. Here, Pinnacle's declarations and the plaintiffs' own Complaint provide evidence that Pinnacle operates "within the stream" of commerce. (see Fulcher Decl. ¶ 4; Compl. ¶ 21.)

B. Unconscionability

The FAA provides that arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court's decision in Concepcion acknowledged that the FAA "preserves generally acceptable contract defenses." Concepcion, 131 S. Ct. at 1748.

"Concepcion did not overthrow the common law contract defense whenever an arbitration clause is involved." Kilgore, 963 F.3d at 963. Rather, the Supreme Court reaffirmed that the FAA "preserves generally applicable contract defenses such as unconscionability, so long as those doctrines are not 'applied in a fashion that disfavors arbitration.'" Id. (quoting Concepcion, 131 S.Ct. at 1747).

"Unconscionability under California law has 'both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'" Id. (quoting Armendariz v. Found. Health Psychare Servs., Inc., 24 Cal. 4th 83, 99 (2000)). While courts "use a 'sliding scale' in analyzing these two elements . . . [n]o matter how heavily one side of the scale tips . . . *both* procedural and substantive unconscionability are required for a court to hold an arbitration agreement enforceable." Id. (citing Armendariz, 24 Cal. 4th at 99).

1. Procedural Unconscionability

"Procedural unconscionability address the manner in which agreement to the disputed term was sought or obtained, such

9

1  as unequal bargaining power between the parties and hidden terms
2  included in contracts of adhesion." Szetela v. Discover Bank, 97
3  Cal. App. 4th 1094, 1099 (4th Dist. 2002).  A contract of
4  adhesion is "a standardized contract, which, imposed and drafted
5  by the party of superior bargaining strength, relegates to the
6  subscribing party only the opportunity to adhere to the contract
7  or reject it." Armendariz, 24 Cal. 4th at 113.

8  Pinnacle, as an employer requiring a preemployment
9  arbitration contract, was in a stronger bargaining position than
10 plaintiffs.  See Armendariz, 24 Cal. 4th at 115 ("[I]n the case
11 of preemployment arbitration contracts, the economic pressure
12 exerted by employers on all but the most sought-after employees
13 may be particularly acute, for the arbitration agreement stands
14 between the employee and necessary employment, and few employees
15 are in a position to refuse a job because of an arbitration
16 agreement.").

17 The cover page to the Agreement specifically states
18 that an applicant who withdraws from the Agreement within the
19 three-day-period must notify Pinnacle, "in writing . . . that
20 [the applicant] no longer desire[s] for [Pinnacle] to consider
21 [the applicant's] application for employment."  (Fulcher Decl. ¶¶
22 7-8, Exs. A & B.)  Thus the Agreement was a "take-it or leave-it"
23 proposition that did not allow plaintiffs the opportunity to
24 negotiate.  See Dittenhafer v. Citigroup, Civ. No. 10-1779 PJH,
25 2010 WL 3063127, at *5 (N.D. Cal. Aug. 2, 2010) (finding "some
26 degree of procedural unconscionability" when the contract was
27 "presented as a take-it-or leave it basis").  Unlike other
28 arbitration agreements that courts have not found to be

10

unconscionable, the Agreement does not provide any "opt-out" provisions. See <u>Kilgore</u>, 673 F.3d at 963-64 (holding that procedural unconscionability did not exist when arbitration agreement granted student loan applicants sixty days to opt out of the arbitration provisions); <u>Circuit City Stores, Inc. v. Ahmed</u>, 283 F.3d 1198, 1200-01 (9th Cir. 2002) (holding that procedural unconscionability did not exist when plaintiff "was given the opportunity to opt-out of the Circuit City arbitration program by mailing in a simple one-page form"); <u>Alvarez v. T-Mobile USA, Inc.</u>, Civ. No. 2:10-2373 WBS GGH, 2011 WL 6702424, at *6 (E.D. Cal. Dec. 12, 2011) (holding that procedural unconscionability did not exist when a consumer agreement that had "some adhesive characteristics" allowed plaintiff "to opt-out of the arbitration clause without suffering any adverse consequences").

Because the Agreement was a preemployment contract that did not contain an opt-out clause, it is procedurally unconscionable.

### 2. <u>Substantive Unconscionability</u>

"Substantive unconscionability centers on the 'terms of the agreement and whether those terms are so one-sided as to shock the conscience.'" <u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165, 1172 (9th Cir. 2003) (<u>quoting Kinney v. United Healthcare Servs., Inc.</u>, 70 Cal. App. 4th 1322, 1330 (4th Dist. 1999), <u>cert. denied</u> 540 U.S. 1160 (2004), <u>overruled on other grounds by</u> 408 F.3d 592 (9th Cir. 2005)). "An arbitration provision is substantively unconscionable if it is 'overly harsh or generates one-sided results.'" <u>Cisneros v. Am. Gen. Fin.</u>

11

Servs., Inc., Civ. No. 11-02869 CRB, 2012 WL 3025913, at *6 (N.D. Cal. July 24, 2012) (quoting Armendariz, 24 Cal. 4th at 114) (internal quotation marks omitted).

In assessing an arbitration agreement, courts evaluate the agreement's individual provisions for substantive unconscionability to ultimately determine whether the agreement is "wholly unenforceable." See, e.g., Ingle, 328 F.3d at 1180 (finding that seven unconscionable provisions rendered the arbitration agreement unenforceable).

### a. Claims Subject to Arbitration

Under the Agreement, the Issue Resolution Rules exclude injunctive relief for unfair competition and/or disclosure of trade secrets from mandatory arbitration. (IRR Rule 2(b).)[3] While "parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope," substantive unconscionability "limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting the forum for itself." Ting v. AT&T, 319 F.2d 1126, 1149 (9th Cir. 2003) (quoting Armendariz, 24 Cal. 4th at 118). A provision which excludes injunctive relief for unfair competition and/or disclosure of trade secrets may be substantively unconscionable because the agreement "compels arbitration of the claims employees are most

---

[3] The Rules also exclude workers' compensation claims. (IRR Rule 2(b).) However, an employer may exclude workers compensation claims because those claims "normally must be adjudicated via a state administrative proceeding with specific requirements." Dittenhafer, 2010 WL 3063127 at *5, aff'd., 467 Fed. App'x 594, 594-95 (9th Cir. 2012)).

12

1  likely to bring against [the employer] . . . [but] exempts from
2  arbitration the claims [the employer] is most likely to bring
3  against its employees."  Ferguson v. Countrywide Credit Indus.,
4  Inc., 298 F.3d 778, 785 (9th Cir. 2002) (quoting Mercuro v. Sup.
5  Ct., 96 Cal. App. 4th 167, 175 (2nd Dist. 2002), review denied
6  sub nom. Mercuro v. Countrywide Sec., Civ. No. S105424, 2002 Cal.
7  LEXIS 3328, at *1 (Cal. May 15, 2002)).

        b. Cost Arrangement

9  "[W]hen an employer imposes mandatory arbitration as a
10 condition of employment, the arbitration agreement . . . cannot
11 generally require the employee to bear any *type* of expense that
12 the employee would not be required to bear . . . in court."
13 Armendariz, 24 Cal. 4th at 110.  A cost-splitting scheme that
14 makes each party bear half the costs of the arbitration "alone
15 would render an arbitration agreement unenforceable."  Circuit
16 City v. Adams ("Adams III"), 279 F.3d 889, 894 (9th Cir. 2002).
17 For example, the Ninth Circuit found a cost-splitting provision
18 unconscionable when the provision forced plaintiffs to pay the
19 National Arbitration Forum filing fee up to a maximum of $125.00
20 and share costs equally after the first day of arbitration.
21 Ferguson, 298 F.3d at 781.

22 The Rules at issue here are distinguishable from
23 Ferguson and Adams III.  In both cases employees had to split
24 arbitrators' fees without a cap on the total costs the employee
25 could incur.  The Rules, however, do not create a cost-splitting
26 scheme.  Rather, they create a cost-limiting scheme.  The Rules
27 provide that Pinnacle will advance the arbitration costs,
28 including the filing and arbitrator fees, and that the

13

arbitration costs will eventually be split between the parties, but "[t]he Employee's liability for the costs and fees of arbitration, other than attorneys' fees . . . <u>shall be limited to $100.</u>"  (IRR Rule 13(a)(i), (a)(ii) (emphasis added).)  Though the parties must bear their own attorneys' fees by default, the arbitrator "is authorized to award attorneys' fees in accordance with applicable law."  (IRR Rule 13(b).)

These provisions do not force plaintiffs to incur any types of costs that they would otherwise avoid in court litigation, and the one hundred dollar cap on total arbitration costs prevents the employees from incurring excessive costs.  Thus the Rules' cost arrangement is not substantively unconscionable.

### c. Discovery

While employees are "at least entitled to discovery sufficient to adequately arbitrate their statutory claims, including access to essential documents and witnesses," courts permit arbitration agreements to "specify 'something less than the full panoply of discovery provided in [the California] Code of Civil Procedure.'"  <u>Ferguson</u>, 298 F.3d at 786-87 (quoting <u>Armendariz</u>, 24 Cal. 4th at 105-06).  Discovery provisions that limit depositions of corporate representatives to a limited number of subjects, but do not impose such limits on depositions of employees, "may afford [plaintiffs] adequate discovery," but "appear to favor [the employer] at the expense of its employees." <u>Id.</u> at 787.

The Rules limit discovery by providing each party with twenty interrogatories and three depositions.  (IRR Rule 7(a)-

14

(b).)  Either party can augment discovery by a showing of substantial need to the arbitrator.  (IRR Rule 7(c).)  Because the Rules provide adequate discovery and limit discovery equally between the parties, the discovery provisions are not substantively unconscionable.

### d. Statute of Limitations

When analyzing shortened statutes of limitations in arbitration agreements, "[t]he critical question is whether 'the period fixed [is] so unreasonable [so] as to show imposition or undue advantage in some way.'"  Jackson v. S.A.W. Entm't Ltd., 629 F. Supp. 2d 1018, 1028 (N.D. Cal. 2009) (quoting Moreno v. Sanchez, 106 Cal. App. 4th 1415, 1430 (2nd Dist. 2003) (internal quotation marks omitted).  Provisions strictly requiring employees to bring all claims within one year are unconscionable because they would "deprive [employees] of the benefit of the continuing violation doctrine."  Adams III, 279 F.3d at 894-95.

The Rules here include a one-year statute of limitations but, unlike Adams III, include a provision specifically stating that the Rules "will not affect tolling doctrines under applicable state laws or the employee's ability to arbitrate continuing violations."  (IRR Rule 4(b).)  By providing a one-year statute of limitations that does not affect the continuing violations doctrine, the Rules do not show imposition or undue advantage.  Thus, the Rules' statute of limitations provision is not substantively unconscionable.

### e. Remedies

Remedy provisions that "fail[] to provide for all the types of relief that would otherwise be available in court" by

15

1  limiting, contrary to federal law, an employee's total and
2  punitive damages are substantively unconscionable. Adams III,
3  279 F.3d at 895 n.20.  The Agreement between Pinnacle and its
4  employees provides that the arbitrator "may award appropriate
5  relief in accordance with applicable law." (IRR Rule 14.)  The
6  Rules' remedy provisions are therefore not substantively
7  unconscionable.

                            f.  Unilateral Termination/Modification

9         Courts have held that arbitration provisions are
10 unconscionable when they permit an employer to unilaterally
11 modify or terminate the agreement, even with written notice to
12 employees. See, e.g., Ingle, 328 F.3d at 1179; Ramirez-Baker v.
13 Beazer Homes, Inc., 636 F. Supp. 2d 1008, 1021-22 (E.D. Cal.
14 2008).  In Ingle, the court held that a provision allowing
15 unilateral modification or termination with 30 days written
16 notice to employees "embeds its adhesiveness by allowing only
17 [the employer] to modify or terminate the terms of the
18 agreement," and was therefore substantively unconscionable.

19        Here, the Agreement provides that Pinnacle "may alter
20 or terminate the Agreement and these Issue Resolution Rules on
21 December 31st or any year upon giving 30 calendar days written
22 notice to employees." (IRR Rule 19.)  While the Agreement goes
23 on to prohibit changes to claims that have yet to be submitted
24 for arbitration, thereby limiting Pinnacle's ability to avoid
25 pending claims by unilateral modification, the Rules' language is
26 almost identical to the provision found unconscionable in Ingle
27 and thus would be substantively unconscionable.
28

16

g. <u>Agreement as a Whole</u>

California law "provides that '[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.'" <u>Armendariz</u>, 24 Cal. 4th at 114 (quoting Cal. Civ. Code § 1670.5(a)).

Refusing to enforce the agreement is only appropriate when the agreement "is permeated by unconscionability." <u>Id.</u> at 122 (internal quotation marks omitted). In exercising their discretion, courts often look to whether the offending provisions "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." <u>Id.</u> at 124; <u>see also</u> <u>Kanbar v. O'Melveny & Myers</u>, 849 F. Supp. 2d 902, 911 (9th Cir. 2011); <u>Ferguson</u>, 298 F.3d at 777-78.

In sum, the only two provisions of the Rules that could potentially impact the fairness of the Issue Resolution are the Agreement's exclusion of injunctive relief for unfair competition and/or trade secrets and Pinnacle's right to unilaterally modify or terminate the arbitration process. The court can conceive of valid reasons, entirely independent of any intent to place the employees at a relative disadvantage or to generate one-sided results, for excluding claims of unfair competition or trade secret violations from the mandatory arbitration provisions of the Agreement. Unlike the type of claims involved in this case,

17

such claims typically arise after the employer-employee relationship has terminated. More importantly, the resolution of such claims has the potential of substantially impacting the rights of third parties.[4]

With regard to Pinnacle's right to unilaterally modify or terminate the arbitration process, the court might be concerned if Pinnacle had exercised that right, or even attempted to exercise it in this case. There is no evidence, however, that Pinnacle attempted to do so. Taken as a whole, the Agreement and Rules, including the provisions on cost arrangement, discovery, statute of limitations, and remedies, provide a largely fair and cost-effective forum for both parties.

The court thus concludes that the unenforceable provisions of the Agreement would not result in an arbitration that is "permeated by unconscionability," nor do they "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." Armendariz, 24 Cal. 4th at 122. Moreover, neither party has suggested that either of those

---

[4] See William Lynch Schaller, Jumping Ship: Legal Issues Relating to Employee Mobility in High Technology Industries, 17 Lab. Law. 25, 103 (2001) ("[E]specially important, a pre-dispute arbitration provision with the employee may not require the new employer to arbitrate, leaving the old employer to fight on two fronts[, namely, against the new employer in court and against the former employee in arbitration]. Thus, a post-dispute arbitration clause, voluntarily negotiated among all three parties (the former employer, the new employer, and the employee) with appropriate discovery and injunctive relief language, is the optimal approach, but good luck getting it: The parties will likely not be on friendly terms.")

18

provisions is relevant to plaintiffs' claims or would even be raised during the arbitration.

The court recognizes that by enforcing the FAA it is effectively precluding plaintiffs from bringing their claims as a class.[5] Nevertheless, courts routinely enforce arbitration agreements that deny class relief. See, e.g., Lewis v. UBS Fin. Servs. Inc., 818 F. Supp. 2d. 1161, 1166 (N.D. Cal. 2011) ("[C]lass action waivers are not unconscionable and are enforceable."); Jasso v. Money Mart Exp., Inc., Civ. No. 11-5500 YGR, 2012 WL 1309171, at *12 (N.D. Cal. April 13, 2012) ("[U]nless the agreement is otherwise unenforceable for unconscionability in its other terms, the inclusion of a class action waiver provides no basis for denying [a motion to compel arbitration]."); Dittenhafer, 2010 WL 3063127 at *5, aff'd., 467 Fed. App'x 594, 594-95 (9th Cir. 2012) ("Nor does the provision excluding class claims from arbitration make the agreement one-sided.").

Overall, "the FAA articulates a strong public policy in favor of arbitration agreements." Ingle, 328 F.3d at 1180; see also Moses H. Cone Mem'l Hosp., 460 U.S. at 24 ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."). In the wake of Concepcion, "unrelated policy concerns," such as a concern that plaintiffs who are denied class relief will not have sufficient incentive to bring their claims, "however worthwhile, cannot

---

[5] The Issue Resolution Rules do not allow arbitrators to handle class disputes unless the parties mutually agree. (Rule 9(f)(i).)

19

undermine the FAA." Coneff v. AT&T Corp., 673 F.3d 1155, 1159 (9th Cir. 2012) (internal quotation marks omitted) (citing Cruz v. Cingular Wireless, LLC, 648 F.3d 1205, 1215 (11th Cir. 2011)).

Accordingly, because although the Agreement and Rules are procedurally unconscionable they are not permeated by substantive unconscionability, the court will grant defendants' motion to compel arbitration and dismiss plaintiffs' claims without prejudice.

IT IS THEREFORE ORDERED that defendants' motion to compel arbitration be, and the same hereby is, GRANTED;

AND IT IS FURTHER ORDERED that this action be, and the same hereby is, DISMISSED without prejudice.

DATED: October 24, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

20